838 A.2d 643

SOUTH NEWTON TOWNSHIP ELECTORS, Appellants

v.

SOUTH NEWTON TOWNSHIP SUPERVISOR,
Ronald BOUCH, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided Dec. 17, 2003.

Jason Kutulakis, for South Newton Tp. Electors, Appellants.

Patrick F. Lauer, Matthew J. Eshelman, Marlin L. Markley, Jr., Camp Hill, for South Newton Tp. Supervisor, Ronald Bouch, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR and LAMB, JJ.

## *OPINION*

Chief Justice CAPPY.

In this matter, we are asked to address the constitutionality of Section 503 of the Second Class Township Code, 53 P.S. § 65503 ("Section 503"), which provides for the recall of a township supervisor. The trial court determined that this statute is unconstitutional as it conflicts with Article VI, § 7 of the Pennsylvania Constitution, which provides the exclusive method of removal for elected officials. For the reasons herein, we affirm the order of the trial court.

Appellants are residents of South Newton Township in Cumberland County, a Second Class Township. On April 19, 2002, Appellants filed a *pro se* complaint seeking to remove Appellee Ronald Bouch from his position as Township Supervisor for the alleged dereliction of his duties, pursuant to Section 503:

§ 65503. **Removal for failure to perform duties**

If any township officer fails to perform the duties of the office, the court of common pleas upon complaint in writing by five percent of the electors of the township may issue a rule upon the officer to show cause why the office should not be declared vacant. The officer shall respond to the rule within thirty days from its date of issue. Upon hearing, the

court may declare the office vacant and require the vacancy to be filled under section 407 [53 P.S. § 65407].

53 P.S. § 65503.

A rule was issued and Appellee responded in the form of preliminary objections. Counsel entered an appearance for Appellants and filed an amended complaint.[1] The trial court again issued a rule, and Appellee filed preliminary objections in the nature of a demurrer. Appellee argued that Article VI, § 7 of the Pennsylvania Constitution set forth the exclusive methods of removing an elected official such as himself from office; pursuant to that provision, removal could occur only upon the vote of two-thirds of the Senate, or upon conviction of misbehavior in office or of any infamous crimes.[2] Appellants failed to allege that any of these events had occurred.

A three-judge panel of the Court of Common Pleas of Cumberland County sustained Appellee's preliminary objections and dismissed the action. The trial court agreed with Appellee that Section 503 conflicted with Article VI, § 7, and thus the Township Code provision was unconstitutional. The trial court relied on this court's decision in *In re Petition to Recall Reese*, 542 Pa. 114, 665 A.2d 1162 (1995), wherein this court held that Article VI, § 7 "indisputably applies to *all elected* officers, and sets forth in unambiguous language the

---

1. Appellants alleged that Appellee failed to perform his duties in that he continued to work for the township after filing a "one hundred percent workers compensation claim"; misappropriated township property for his own use; maintained business records poorly; failed to exercise sound fiscal management in making certain payments; and harassed and intimidated township residents and employees who disagreed with him. Amended Complaint at ¶¶ 11–17.

2. Article VI, § 7, entitled "Removal of Civil Officers", states:

   All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

   PA. CONST. art. VI, § 7.

exclusive method ... of removing such elected officers." 665 A.2d at 1167 (citations omitted) (original emphasis). A direct appeal to this court followed. 42 Pa.C.S. § 722(7).

The question presented is one of constitutionality of a legislative enactment, specifically, the extent to which the removal provision in Article VI, § 7 is exclusive and invalidates statutory pronouncements governing the removal of elected civil officers. The standards governing our review are clear. Legislative enactments are presumed to be constitutional, and this presumption can be rebutted only if the statute clearly, plainly and palpably violates the Pennsylvania Constitution. *Reese*, 665 A.2d at 1164 (citations omitted). Because this question involves a question of law, our review is de novo. *Buffalo Township v. Jones* 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

In the instant case, the trial court relied on *Reese*, and we too begin our discussion with that case. In *Reese*, the petitioners sought to remove the mayor of Kingston under the recall provisions of the Kingston Home Rule Charter, which allowed for the removal of an elected municipal officer via a petition for recall. The trial court held that the recall provisions were unconstitutional, as they were contrary to Article VI, § 7. This court affirmed.

In so doing, we addressed prior rationales espoused by this court for upholding statutory removal provisions. One of the seminal cases was *In re Supervisors of Milford Township, Somerset County*, 291 Pa. 46, 139 A. 623 (1927), which involved a petition to the court of quarter sessions to have certain township supervisors' offices declared vacant due to alleged dereliction of duty by the office holders. The petitioners sought removal pursuant to section 192 of the General Township Act of July 14, 1917, P.L. 840, § 192 (a predecessor to the removal provision at issue, 53 P.S. § 65503). This court construed the statute as creating the office of township supervisor with a "conditional" six-year term of office, the condition being that the supervisor could not refuse or neglect to perform his duties. We determined that the authority to

make the term of office a conditional one was implied in a constitutional provision (former Art. XII, § 1, presently Art. VI, § 1), which indicated that officers who were not provided for in the constitution "shall be elected or appointed as may be directed by law". Recognizing that when a term of office was subject to the legislature's control, it could abolish the office and oust officers during their term, we reasoned that an act providing for removal following a judicial determination of a breach of the constitutional "condition that they behave themselves well while in office" (Art. VI, § 4) should also be permissible. We thus concluded that Article VI, § 4 (present Art. VI, § 7)[3] did not apply "where the Legislature, having the right to fix the length of a term of office, has made it determinable by judicial proceedings, on other contingencies other than the mere passage of time." 139 A. at 625. Accordingly, we held that the statutory removal provision was constitutionally permissible.

After having reviewed *Milford Township*, this court in *Reese* rejected its rationale relating to "conditional officers" and overruled that case. Instead, we reasoned that Article VI, § 7 applied "to *all elected* officers" (emphasis in original). Accordingly, we held that the method of removal provided for in the Kingston Home Rule Charter was specifically denied by the Pennsylvania Constitution.

Appellants advance several arguments as to why *Reese* is not controlling. Appellants contend that *Reese* is distinguishable since it involved the recall provisions in the Kingston Home Rule Charter, which did not provide for due process in the removal of municipal officers. Appellants argue that Section 503 was enacted to complement then-Article VI, § 4 (now Art. VI, § 7), to afford a township supervisor the same due process rights afforded to all civil officers under Article VI, § 7.[4] Appellants point out that Section 503 provides more due process rights that a township supervisor would be enti-

**3.** The text of Article VI, § 7 is similar to the text of Article VI, § 4 as it appeared in the 1874 Constitution. *See* Pa Const. art. VI, § 7, Historical Notes.

**4.** Appellants attempt to resurrect the reasoning of the lead opinion in *Citizens Committee to Recall Rizzo v. Bd. of Elections of City and County*

tled to under Article VI, § 7. We do not agree with Appellants' focus. The level of due process afforded to a civil officer under the statute or the statute's purpose is not the pertinent concern. The issue is whether the provisions of Section 503 conflict with the Pennsylvania Constitution.

■ Appellants further maintain that Article VI, § 7 does not grant township officers a constitutional right to only be removed by the Governor and Senate; rather, the only right afforded is a right to due process before removal. Again, we cannot agree. Article VI, § 7 confirms both that officers are entitled to "due notice and full hearing", and sets forth the permissible process of removing such officers.

■ Appellants next claim that the General Assembly has not indicated its interest in repealing Section 503. Appellants note that twenty-three days after this court's decision in *Reese* (holding that Art. VI, § 7 provided the exclusive method of removing elected officers), the General Assembly deleted and reenacted several provisions of the Second Class Township Code; Section 503 was not deleted, but was reenacted and amended. Nor did the Legislature repeal Section 503 when Article VI, § 4 was amended and renumbered as Article VI, § 7. Even assuming that the General Assembly wanted to provide for an alternative means to remove township supervisors, those alternative means cannot conflict with the provisions of Article VI, § 7. The General Assembly's failure to repeal an unconstitutional statute does not make that statute constitutionally permissible.[5]

*of Phil.*, 470 Pa. 1, 367 A.2d 232 (1976). In *Rizzo*, a plurality of the court determined that the recall provisions of the Philadelphia Home Rule Charter were unconstitutional. In the lead opinion, then-Chief Justice Jones endorsed the view from *Milford Township* that Article VI, § 1 implied a power for the legislature to establish methods of removal for officers whose selection was not provided for in the Pennsylvania Constitution. However, he further reasoned that those methods of removal were limited by the requirement of Article VI, § 7 that all such officers only be removed for cause, demonstrated after notice and a hearing were afforded. *Id.* at 245–47. This reasoning was not joined by a majority of the Justices.

5. Appellants indicate that this court has determined prior cases without declaring Section 503 to be unconstitutional. *E.g., Matter of Franklin*

Appellants further assert that the General Assembly, having created the office of township supervisor (53 P.S. § 65601), may also provide for the manner in which that officer is to be removed. Yet this rationale, which was adopted in *Milford Township*, was rejected by the later decision in *Reese.*

■■ Finally, Appellants argue that public policy supports a finding of constitutionality. They contend that a contrary result will allow township electors to burden the Governor and Senate with affairs that are not of statewide importance, which would waste government resources. Moreover, they assert that deeming Section 503 to be unconstitutional will leave township electors without a remedy—apart from the four-year election cycle—because Article VI, § 7 is impractical, does not provide an unambiguous procedure for removing civil officers, and essentially is not accessible to township electors. We disagree. The fact that Article VI, § 7 does not explicitly spell out the manner in which Article VI, § 7 is to be invoked does not make the method of removal unclear. Moreover, even if we agreed that the constitutional removal method is not as practical as the one provided for in Section 503, we cannot disregard a controlling constitutional provision.[6]

Appellants have advanced a second argument to support the constitutionality of Section 503, namely, that the provisions governing removal of the township supervisor are permissible because they predated the 1874 Constitution. This argument is premised upon this court's holding in *In re Georges Township School Directors,* 286 Pa. 129, 133 A. 223 (1926).

*Georges Township* involved the removal of school directors under section 217 of the 1911 School Code ("act of 1911").

*Twp. Bd. of Supervisors,* 475 Pa. 65, 379 A.2d 874 (1977); *Silver v. Downs,* 493 Pa. 50, 425 A.2d 359 (1981). Yet in both of these cases (which pre-date *Reese* ), we specifically indicated that the constitutionality of Section 503 was not at issue. 379 A.2d at 883; 425 A.2d at 364 n. 9.

6. Appellants request that we provide "clear and unambiguous procedures to access the Senate of Pennsylvania", and guidance in determining what constitutes "reasonable cause" and a "full hearing" under Article VI, § 7. Appellants' Br. at 27. Such guidance is not within the scope of this opinion.

Statutes providing for the removal of school board directors had appeared, *inter alia*, in 1838, 1840, and 1854. The trial court ordered that several of the directors be removed. On appeal, the directors raised the issue of whether the act of 1911 was unconstitutional, as violative of the removal procedures in Article VI, § 4 of the 1874 Constitution (presently Article VI, § 7), thus rendering the trial court proceedings void. On appeal, this court rejected that claim and determined that the act of 1911 did not violate the Constitution.

We recognized the principle that legislation directing a particular form of process that pre-existed the 1874 Constitution remains effective. *Id.* at 225–26. If the legislature attempts to grant a divergent form of procedure different from the law as it stood prior to the 1874 Constitution, then the new legislation would be deemed invalid, even if it was "a part, though an extension, of a system theretofore existing." *Id.* at 226 (citation omitted). We noted that the pre- and post-1874 constitutional acts at issue in *Georges Township* permitted removal for similar reasons and in a similar manner: "[t]he act of 1911 provides for removal for like causes named in the act of 1854; the only difference being in the conferring of jurisdiction to hear upon the common pleas, instead of the quarter sessions, a change not prohibited by the Constitution in any of its sections, and therefore unobjectionable." *Id.* Thus, we indicated that if the court was permitted to remove the school directors prior to 1874 based on the evidence presented, then it had jurisdiction, despite the constitutional provision. *Id.* The court concluded that evidence that was presented to the trial court would have supported the removal of the township supervisors under either the 1854 act or the 1911 act. Accordingly, there was no constitutional prohibition on the directors' removal under the statutory procedure.

*Georges Township* thus makes clear that if the method or causes of removal were changed from those that existed prior to the passage of the constitutional provision, then the new legislation cannot be deemed valid.

Appellants contend that Section 503 is constitutional because legislation existed that regulated the manner and causes

of removal of township supervisors prior to the 1874 Constitution. In particular, Appellants direct our attention to the Act of 1834, April 15, P.L. No. 554, § 92 ("1834 Act"), which subjected township supervisors to a fine for neglect of duty [7], and the Act of 1860, March 16, P.L. No. 174, § 2 ("1860 Act"), which provided for their removal if they failed to post a statutorily-required bond.[8] Appellee responds that only after the 1874 Constitution was there legislation that allowed for the removal of township supervisors for neglect in performing duties. In an act passed in 1907, the legislature permitted removal of a township officer upon complaint of twenty-five citizens for "neglect to perform his duties." Act of 1907, March 22, P.L. 27, § 1.

We agree with Appellee. The causes of removal for township supervisors as well as the methods that existed before the passage of the 1874 Constitution differed from those that existed after its passage. For example, with regard to the causes of removal, under Section 503, removal is permitted if the supervisor "fails to perform the duties of the office". However, the pre–1874 constitutional statutes did not

7. Section 92 of the 1834 Act states:

If any supervisor shall neglect or refuse to perform any duty required of him by law, he shall forfeit and pay a sum not less than four dollars nor exceeding fifty dollars to be recovered in a summary way, by action of debt in the name of the commonwealth, before any justice of the peace of the county, to be applied towards repairing the highways of the same townships, Provided, That such supervisors may appeal from the judgment of such justice to the next court of Quarter Sessions, who shall take such order thereon as to them shall appear just and reasonable, and the same shall be final and conclusive.

8. Section 2 of the 1860 Act states:

That any officer or officers failing to give the security required by the first section of this act, within one month after his election, then his or their offices shall be declared vacant, and the court of quarter sessions shall appoint one or more, as the case may be, subject to all the restrictions of the first section of this act, and who shall hold his or their office till the next election; and until such appointment is made, the officer or officers giving bail shall act for one or more, and if all fail to give the required security, then the preceding officers shall perform the duties as heretofore, until such appointment is made by the court, in accordance with the provisions of this act.

allow for removal for such neglect of duties. Under the 1834 Act, for example, the penalty for neglect of duty was payment of a sum—not removal. The 1860 Act did permit removal of the township supervisor, but only upon the officer's refusal to give a required security—not for neglecting the duties of the office. Unlike the allegations in *Georges Township*, Appellants' allegations regarding Appellee's dereliction of duties would not have provided a basis for removal under the pre-1874 legislation.

Moreover, with regard to the method of removal, neither of these acts contained provisions allowing a certain number of citizens to petition for removal of the supervisor. Because there was no legislation existing prior to the 1874 Constitution providing for the removal of a township supervisor via petition for his failure to perform the duties of the office, the tenet from *Georges Township* does not control.

Accordingly, we find that the provisions of 53 P.S. § 65503 are violative of Article VI, § 7 of the Pennsylvania Constitution. The order of the trial court is affirmed.

Justice EAKIN did not participate in the consideration or decision of this case.

Justice LAMB files a dissenting opinion.

Justice LAMB dissenting.

I dissent and would hold that the removal provision codified as Section 503 of the Second Class Township Code, the Act of May 1, 1933, is not in conflict with Article VI, Section 7 of the Pennsylvania Constitution because it is a continuance of authority granted by statutory provisions that antedate the 1873 Constitution, as we expressly discussed in *In re Supervisors of Milford Township*, 291 Pa. 46, 139 A. 623, 624 (1927), in upholding the constitutional validity of the immediate predecessor to the statute here challenged: Section 192 of the General Township Act of July 14, 1917. The only pertinent issue left undecided in *Milford Township* was whether the express repeal of prior laws by the 1917 Act required a different result—an issue on which the majority does not

comment. Therefore, no reason appears to depart from the analysis of this issue in our prior decision.