Calvin W. Brower, Warden of the Schuylkill County Prison, and Elizabeth Brower, Matron of the same, Appellants, *v.* Frank Kantner and John L. Stauffer, Commissioners of Schuylkill County, et al.

*Equity—Public officers—Warden and matron of prison—County commissioners—Quo warranto.*

A court of equity has no jurisdiction to entertain a bill for an injunction to restrain the county commissioners from interfering with the right of the complainants, appointees of said commissioners, to exercise the rights and duties of warden and matron of a prison. The appropriate remedy in such a case is at law by a writ of quo warranto.

Argued Feb. 16, 1899. Appeal, No. 47, Jan. T., 1899, by plaintiffs, from decree of C. P. Schuylkill Co., Oct. T., 1898, No. 162, dismissing bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an injunction.

From the record it appeared that Calvin W. Brower had been appointed warden of the Schuylkill county prison, and that Elizabeth Brower had been appointed matron of the same by the county commissioners.

The bill set forth an attempt upon the part of the county commissioners to remove the complainants from these positions.

The prayer of the bill was, "that the defendants be restrained by preliminary injunction until hearing, and permanently thereafter, from interfering with the right of the plaintiffs to exercise the rights and duties of warden and matron of said Schuylkill county prison."

PERSHING, P. J., filed the following opinion:

At the time fixed for hearing the court ruled that there were preliminary questions to be disposed of before proceeding with the case on its merits: Collyer v. Collyer, 38 Pa. 257; Christy's App., 92 Pa. 157; Dampf's App., 106 Pa. 72. The argument was, therefore, chiefly upon the right of the county commissioners to remove Mr. and Mrs. Brower, as warden and matron respectively of the county prison, and whether the case was one of equity jurisdiction.

Prior to the adoption of the present constitution the right of the appointing power to remove its appointees at will depended on the language of the statute which conferred the power to make appointments. An illustration of this is furnished by the case of Field v. Com., 32 Pa. 478. By the Act of May 8, 1854, P. L. 627, sec. 46, the state superintendent of common schools was given " the power of removing the county superintendent for neglect of duty, incompetency or immorality, and to appoint another in his stead." Without notice of any charge preferred against him, and without a hearing, the state superintendent removed J. K. Krewson from the office of superintendent of the common schools of Schuylkill county, and appointed Wm. A. Field in his place. Krewson, on a writ of quo warranto, had this action reversed. The Supreme Court held that, while it was within the power of the legislature to have made the county superintendent, or any other officer or body they thought proper, removable at pleasure, yet under the act of 1854, the county superintendent could not be removed unless it was shown on a hearing that he was negligent, incompetent or immoral. The court further said, " Where an appointment is during pleasure, or the power of removal is entirely discretionary, there the will of the appointing or removing power is without control, and no reason can be asked for, nor is it necessary that any cause should be assigned." In the case in hand, the county commissioners base their right to remove Mr. and Mrs. Brower upon that part of section 4, article 6 of the constitution, which declares as follows: " Appointed officers, other then the judges of the courts of record and the superintendent of public instruction may be removed at the pleasure of the power by which they shall have been appointed." This is a provision not found in any former constitution of this state. The distinction between elected and appointed officers, as to the power of removal, is clearly shown in Houseman v. Com., 100 Pa. 222. Mr. Justice GREEN said: " The distinction between appointed and elected officers is one that relates merely to the source of their authority. That is, those that are appointed, not some of them, but all of them, may be removed at the mere pleasure of the power that appointed them." In this class no cause for removal need be shown; " the mere will of the appointing power " is decisive. " The plain, unambiguous

words of the constitution," says the Supreme Court, "positively declare that all appointed officers shall be subject to such removal." See also Lane v. Com., 103 Pa. 481.

This is not the first time this question has been before. this court. On June 10, 1887, Jeremiah Curran was elected secretary of the Norwegian township school board, and, without notice or reason given, was removed therefrom on the following 30th of July. One John Marrah was appointed in his place. Proceedings in quo warranto were instituted by Curran. On the authority of the express language of the constitution and the decision of the Supreme Court in Houseman v. Com., supra, this court held that Curran had been legally removed. We think the same conclusion is inevitable in the case of the present complainants.

The real question in dispute is whether C. W. Brower or Jas. H. Levan has the legal right to exercise the duties of warden of the county prison. The bill itself shows this. It asserts that Levan is in possession of the office contrary to law; that he usurped the same, and that this is against the rights of said C. W. Brower, who is legally entitled to said office, etc. Now nothing is better settled in Pennsylvania than that a court of equity has no jurisdiction in a case of contested right to the possession of an office. This can only be heard and determined by a writ of quo warranto, "as settled," said the Supreme Court, in Com. v. Graham, 64 Pa. 342 (1870), "by the uniform course of decision for more than half a century." The Act of June 14, 1836, P. L. 621, Purd. Dig. 1773, provides: "Writs of quo warranto may issue," inter alia, "in case any person shall usurp, intrude into or unlawfully hold or exercise any county or township office within the respective county." It is the writ by which to try the right to all military as well as civil offices: Com. v. Small, 26 Pa. 31; Field v. Com., supra. A bill in equity will not lie to restrain a person from acting in a public office. The remedy is at law by quo warranto: Goldsworthy et al. v. Boyle et al., 175 Pa. 246. That our courts will not entertain equity jurisdiction where there is an adequate remedy at law, is well settled: Smaltz's App., 99 Pa. 310; Brown's App., 66 Pa. 155. A statutory remedy is an adequate remedy at law, and may be interposed against a proceeding in equity, on the same subject-matter, at any time, even on final

hearing: Bank of Ky. v. Schuylkill Bank, 1 Pars. Select Eq.
Cases, 180. A bill in equity to compel the surrender of the
property of a corporation cannot be sustained where it appears
that the real question in controversy is the validity of the
election of the defendants as officers of the corporation. In
such cases a quo warranto is the appropriate remedy: Bedford
Springs Co. v. McMeen et al., 161 Pa. 639. In Gilroy's App.,
100 Pa. 5, it was held that, the statutory remedy by quo war-
ranto, where the title to an office was in dispute, was not only
adequate, but was exclusive.

The question of jurisdiction may be raised by the answer.
Equity Rule 7, section 38, provides: "And the defendant shall
be entitled in all cases by answer, to insist on all matters of de-
fense in law (not being matters of abatement, or to the character
of the parties, or of matters of form) to the merits of the bill,
of which he may be entitled to avail himself by a demurrer or
plea in bar," etc. One of the best of modern improvements in
chancery pleading is embodied in the rules by which a defend-
ant may set up in his answer any matter of defense, which he
might do by demurrer or plea to any part of the bill: Under-
wood v. Warner, 3 Phila. 414, SHARSWOOD, J. See Br. Eq.
490; Adams's Eq. 331, ed. of 1890.

On the argument the Act of May 26, 1897, P. L. 107 was
discussed, and a newspaper clipping of a decision under the
Veteran Act of the state of New York was read by counsel for
the complainants. The act of 1897 prohibits the discharge from
public positions of Union soldiers without a reasonable cause.
A proviso, however, declares that the act "shall not apply, reg-
ulate or control in any manner whatsoever," in appointments
where the term or period is named or designated, for which
any incumbent shall serve or occupy any office. The act for
the government of the county prison provides that the county
commissioners shall annually appoint the "keeper, matron and
physician" for said prison. This designates the term of ser-
vice, and, in our opinion, places the case under consideration
outside of the provisions of the act referred to. If our con-
struction of this somewhat obscure enactment is wrong, it will
not be contended that an act of assembly can nullify or repeal
a provision of the constitution, which declares in plain and un-
ambiguous language that appointed officers may be removed

at the pleasure of the power by which they shall have been ap-
pointed.   The constitution is the suprema lex—the supreme
statute of the state, enacted by the whole people in the exercise
of their sovereignty.   By it all legislative statutes are to be
tested.   They are but branches of the constitutional vine, and
if they have not their source of life in it, they must perish.
Should both of these positions prove to be untenable, it still
remains that a bill in equity will not lie, because of the adequate
statutory remedy by writ of quo warranto.

The cases of C. W. Brower and Elizabeth Brower differ in this :
Mr. Brower is not in possession of the office of warden, while Mrs.
Brower is in possession of the office of matron.   They jointly
pray for the same relief.   As the offices of warden and matron
are necessarily held by different persons, and have separate
and distinct duties attached to each, the question suggests it-
self whether the complainants can be joined in one bill.   How-
ever this may be, it is apparent that the right of Mrs. Brower
to relief (outside of the question of jurisdiction), depends upon
her legal right to retain possession of the office of matron.   We
have already decided that the county commissioners had the
power to remove her.   In refusing to give way to her successor,
Mrs. Brower occupies a position which debars her from invok-
ing the aid of the court to protect her in it.   She is at most
matron de facto.   Mrs. Robinson is matron de jure, and is un-
der the law entitled to the salary of the office from the time
the appointment took effect.   In City of Philadelphia v. Rink,
15 W. N. C. 345, affirmed by the Supreme Court, 17 W. N. C.
136, s. c. 2 Cent. Rep. 289, it was decided that the salary an-
nexed by law to a public office is payable only to the person
entitled de jure to such office, during the entire term for which
he was elected, notwithstanding that during a portion of the
term the office was occupied and the duties performed by a de
facto incumbent, who claimed the right to hold it.   The same
principle had been decided six years before, in the case of Lu-
zerne Co. v. Trimmer, 95 Pa. 97.   There Barber was declared
to have been duly elected prothonotary, by the court of com-
mon pleas ; Trimmer, who was in possession of the office,
refused to surrender it, and the contest was carried to the Su-
preme Court.   That tribunal decided that from the time Barber
was declared elected by the court below he was the prothono-

tary de jure, and Trimmer was merely an officer de facto, and that Barber was entitled to receive all the fees of the office in the interval.

It is our special desire that all parties to this controversy should clearly understand their respective positions. If Mrs. Brower is holding an office from which she has been legally removed, to the exclusion of one who has the legal right, the law points out the way to correct the legal wrong, and this, of course, is not by threats, force or violence of any kind. We are bound to declare what in our judgment is the law. We cannot deal with the motives of the commissioners in removing Mr. and Mrs. Brower any more than we can set aside the law which gave them the power to do so. Whether they acted wisely or unwisely, for the interest of the public or against that interest, are questions which must be referred for decision to a different tribunal. We have discussed this case at, perhaps, unnecessary length, because of the widespread interest it has aroused in the county. It is notorious that factional politics is at the bottom of all the trouble. No principle is at stake. It is merely the case where one faction of a political party avails itself of its opportunity to punish another faction of the same party, by turning out of office those who adhere to the one, and putting into their places those who train with the other. This is the foundation of the whole controversy.

And now, August 26, 1898, the bill of complainants is dismissed for want of jurisdiction, at their costs, and a bill of exceptions sealed.

*Error assigned* was the decree of the court.

*James Ryon*, with him *George W. Ryon*, for appellants.— Either of two conflicting bodies of men, claiming to hold one and the same office, at one and the same time, may apply to the court for an injunction to restrain the other from the usurpation of powers to which they are not legally entitled: Kerr v. Trego, 47 Pa. 292.

Equitable jurisdiction does not depend on the want of a common-law remedy. A bill may be sustained solely on the ground that it is the most convenient: Brush Elec. Co.'s App., 114 Pa. 574; Warner v. McMullin, 131 Pa. 370; Drake v. Lacoe,

157 Pa. 17; Wesley Church v. Moore, 10 Pa. 273; Ewing v. Thompson, 43 Pa. 372.

*George J. Wadlinger,* with him *A. L. Shay,* for appellees.— Complainants had an adequate remedy at law: Gilroy's App., 100 Pa. 5; Goldsworthy v. Boyle, 175 Pa. 246; Updegraff v. 'Jrans, 47 Pa. 103; Hagner v. Heyberger, 7 W. & S. 104; Phila. v. Rink, 17 W. N. C. 136; Luzerne Co. v. Trimmer, 95 Pa. 97.

PER CURIAM, February 27, 1899:

This appeal is from the decree dismissing the bill, at plaintiffs' costs, for want of jurisdiction.

After referring to the material facts and fully considering the question of jurisdiction raised by the answers of some of the defendants, the learned president of the common pleas came to the conclusion that if the plaintiffs have a good cause of action, arising out of the averments of fact set forth in the bill, their remedy is not in equity, but at law, by a writ of quo warranto; and he accordingly dismissed the bill.

For reasons fully stated by him, we are not only satisfied that this conclusion is correct, but we also think there is nothing in the specifications of error that requires further discussion.

The decree is therefore affirmed on his opinion, sent up with the record, and the appeal is dismissed at appellants' costs.